IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RUTH GRAY, individually and as personal representative and special administrator of the ESTATE OF STEPHEN GRAY,** | )<br>)<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Case No. 20-1037-TC-GEB<br>) |
| **CONNER INDUSTRIES, INC.,** | )<br>) |
| **Defendant.** | )<br>) |

## MEMORANDUM AND ORDER

The matter comes before the Court on Plaintiff's Motion to Compel Discovery Responses (ECF No. 65). On January 20, 2021, the Court conducted a motion hearing. After careful consideration of all briefing and hearing arguments from counsel, the Court orally **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion[1] and established new deadlines for this case.[2] This Order memorializes the Court's rulings from the hearing.

I.   **Background**[3]

Defendant operates a manufacturing facility in Valley Center, Kansas that provides wholesale and industrial lumber, custom pallets, and custom crates to customers in and

---

[1] ECF No. 72.
[2] ECF No. 73.
[3] Unless otherwise noted, the information recited in this section is taken from the briefs regarding Plaintiff's motion to compel (ECF Nos. 65 & 67). This background information should not be construed as either judicial findings or factual determinations.

around Kansas. Defendant's manufacturing facility collects sawdust in a bin and stores it. Defendant allowed certain members of the public to obtain sawdust from the bin for use in either farming or other operations.

Stephen Gray owned, trained, and cared for horses. He obtained sawdust from Defendant's facility for use at his horse stable for many years. On March 7, 2019, Mr. Gray went to Defendant's facility to load sawdust in his trailer. He became engulfed in sawdust and died. Plaintiff, Ruth Gray, individually and as personal representative of the Estate of Stephen Gray, brought this wrongful death and survival action against Defendant. Specifically, she raises a claim of negligence and seeks punitive damages alleging gross negligence and reckless disregard of the rights and safety of others.

## II.    Plaintiff's Motion to Compel (ECF No. 65)

Plaintiff's motion to compel was timely filed, is fully briefed and as noted above, has been argued to the Court.[4] Plaintiff asks the Court to compel Defendant to produce unredacted copies of Documents 1-8 and 12 listed on Defendant's supplemental privilege log, largely produced in response to Plaintiff's First Request for Production No. 32 ("RFP No. 32"). The documents include emails between defense counsel and Defendant's insurance adjuster regarding the investigation of the claim at issue; memoranda prepared by defense counsel in the course of the investigation; liability claim file analysis, including reserve information; and claims file notes prepared by the adjuster.

---

[4] ECF Nos. 65, 67, & 72.

Plaintiff served her First Request for Production of Documents to Defendant on May19, 2020.[5] Plaintiff's RFP No. 32 sought a "complete copy of any and all claims files regarding this matter," referencing the incident with Stephen Gray. Defendant served its responses on July 9, 2020[6] and objected to the production of any documents based on attorney-client privilege and the work product doctrine. Defendant did not produce a privilege log with its initial responses.

The parties filed motions for extension of time to file any motion to compel, as they continued to confer regarding discovery issues.[7] Defendant served its First Supplemental Responses on August 21, 2020,[8] which provided a timeline of defense counsel's work in the case to support its claim that litigation had been anticipated from the time of the incident.[9] With its First Supplemental Responses, Defendant produced its first privilege

---

[5] ECF No. 11.
[6] ECF No. 20.
[7] ECF Nos. 24, 28, 33, & 36.
[8] ECF No. 30.
[9] Supplemental Response: Conner stands by its objections. Conner's counsel has prepared and is producing herewith a privilege log pertaining to documents that have been identified as being in the claim file by Conner's insurer for the period up to December 6, 2019, the date of Plaintiff's demand/settlement brochure. Conner also produces supplemental documents herewith provided to it by the insurer from its claim file as non-privileged and non-protected for the period up to December 6, 2019, the date of Plaintiff's demand/settlement brochure. See DEFT 818—860.

***

- March 7, 2019, at approximately mid-day, the accident involving Mr. Gray occurs.
- March 7, 2019, late in the day, Conner's insurance company is first notified of the accident.
- March 8, 2019, in the morning via telephone and subsequent emails, Conner's insurance company engages Triplett Woolf Garretson, LLC as legal counsel to handle and direct the claim and investigation.
- March 8, 2019, Triplett Woolf Garretson, LLC engages with Conner as defense counsel relative to handling the claim and investigation.
- March 9, 2019, Triplett Woolf Garretson, LLC visits the accident site.
- March 19, 2019, DeVaughn James (counsel for Plaintiff) sends a private investigator to Conner. Conner tells the private investigator to talk to Triplett Woolf Garretson, LLC.

log and supplemented its prior production with non-privileged, non-protected documents from the claims file. Defendant served its Second Supplemental Response to RFP No. 32 on December 8, 2020 which asserted counsel had reviewed the entire claims file, produced additional documents, and provided a supplemental privilege log.

The parties have been unable to resolve their discovery issues and the Court has held multiple discovery conferences to resolve outstanding issues.[10] At the third such discovery conference, the Court set briefing deadlines for Plaintiff's motion to compel, ordered Defendant to produce copies of its privilege log and the documents at issue for *in camera* review, and set the motion to compel for oral argument.[11] Each of the parties' arguments are addressed in turn.

### A.  Parties' Arguments

#### 1.  Plaintiff's Position

Plaintiff argues:

---

- March 20, 2019, Andrew Geren (DeVaughn James) emails Triplett Woolf Garretson, LLC.
- March 22, 2019, Triplett Woolf Garretson, LLC confirms via email to Andrew Geren (DeVaughn James) that it is counsel for Conner relative to the accident involving Mr. Gray.
- May 7, 2019, Andrew Geren (DeVaughn James) writes directly to Conner asking for documents.
- May 14, 2019, Triplett Woolf Garretson, LLC writes DeVaughn James, in response to the May 7, 2019 letter sent directly to Conner, advising it is improper for DeVaughn James to attempt direct communication with Conner, which DeVaughn James already knows is represented by Triplett Woolf Garretson, LLC.
- May 20, 2019, DeVaughn James acknowledges its attempt to contact Conner directly was improper and thereafter communicates directly with Triplett Woolf Garretson, LLC for the remainder of its investigation."

[10] ECF Nos. 39, 52, & 63.
[11] ECF No. 63.

1) the emails from defense counsel to the adjuster, memoranda prepared by defense counsel, liability claims file analysis, and claims file notes are not protected by the work-product doctrine nor the attorney-client privilege;[12]

2) the documents were not prepared in anticipation of litigation as there was not a real and imminent threat of litigation at the time they were created;[13]

3) the attorney-client privilege protects only communications between lawyer and client for the purpose of either seeking or giving legal advice, but the privilege does not protect the underlying facts to any privileged communication;[14] and

4) failure to adequately describe either documents or information withheld in a privilege log and/or an excessive or unreasonable delay in providing a privilege log can waive an asserted privilege.[15]

### 2. Defendant's Position

Defendant argues:

1) the investigation was made by counsel, in anticipation of litigation;

2) even if the Court found work product documents were discoverable the Court must protect against the disclosure of mental impressions, conclusions, opinions or legal theories;[16] and

---

[12] ECF No. 65 at 2-4.
[13] *Id.* at 2-3.
[14] *Id.* at 3.
[15] *Id.*
[16] ECF No. 67 at 1-2.

5

3) the "client", as referenced in K.S.A. § 60-426, includes the "actual client's authorized representative, which under the insurance tri-partite relationship includes the client's insurer."[17]

### B. Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Given the prior conferences held on the topic of the motion to compel, the Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

### C. Analysis

Fed. R. Civ. P. 26(b) and 34 address the scope of discovery regarding document production. Fed. R. Civ. P. 26(b) provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..." And, Fed. R. Civ. P. 34(b) states a party objecting to a request for documents "must state whether any responsive materials are being withheld on the basis of that objection."[18] The party asserting an objection of work product immunity or attorney-client privilege bears the burden of establishing that either or both apply.[19]

---

[17] *Id.*
[18] Fed. R. Civ. P. 34(b)(2)(C).
[19] *Marten v. Yellow Freight System, Inc.*, No. 96-cv-2013, 1998 WL 13244, *4 (D. Kan. Jan. 6, 1998).

6

### 1. Work Product Protection

Work product protection is determined based upon federal law.[20] Fed. R. Civ. P. 26(b)(3) provides "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial **by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)** (emphasis added)." To establish work-product protection, a party must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[21] There is no dispute the emails from defense counsel to the adjuster, memoranda prepared by defense counsel, liability claims file analysis, and claims file notes are documents prepared by either defense counsel or the insurance adjuster, both representatives of the Defendant. The only point of contention is whether the documents were prepared in anticipation of litigation.

Whether documents are prepared in anticipation of litigation requires "a case-by-case analysis, considering the unique factual context of the given problem."[22] There are two components in determining whether documents are prepared in anticipation of litigation: 1) causation – whether the document was created because of the anticipation of litigation; and 2) reasonableness – whether the threat of litigation is real and imminent.[23]

---

[20] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013); s*ee also S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010).
[21] *Kannaday* at 648.
[22] *Quality Time, Inc. v. West Bend Mut. Ins. Co*., No. 12-cv-1008, 2012 WL 5499555, *6 (D. Kan. Nov. 13, 2012).
[23] *Id.*

A threat of litigation is real and imminent when there is a "substantial probability that litigation will ensue at the time the documents were drafted."[24]

Regarding the claims files, and documents included in them, Plaintiff argues the existence of work product "depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation,"[25] and retaining counsel is not enough to invoke the work product doctrine.[26] But, there is one significant distinction between this case and the cases cited by Plaintiff. In those cases, the investigation and documents at issue were undertaken or prepared primarily, if not completely, by either the insurer or experts the insurer hired.[27] Here, defense counsel conducted the investigation himself. Although investigative work is normally not protected by the work product doctrine, it is if done "under the supervision of an attorney" in preparation for the "real and imminent threat of litigation or trial."[28] As the investigation was conducted by counsel, the Court will next look at when there was a real and imminent threat of litigation.

The crux of Plaintiff's argument is although Defendant engaged counsel on March 8, 2019, the day after the death of Stephen Gray, Defendant could not have anticipated litigation until December 6, 2019, the date of Plaintiff's demand. The Court disagrees. This case, and the claim investigated, involved the death of Stephen Gray, who died at

---

[24] *Quality Time, Inc.*, 2012 WL 5499555 at *6.
[25] ECF No. 65 at 2, citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.,* 247 F.R.D. 656, 659 (D. Kan. 2007).
[26] *Id.,* citing *Quality Time, Inc*., 2012 WL 5499555 at *7.
[27] *U.S. Fire Ins. Co.* 247 F.R.D. at 657; and *Quality Time, Inc*., 2012 WL 5499555 at *1.
[28] *Kannaday,* 292 F.R.D. at 648.

Defendant's facility on March 7, 2019.[29]   There were no eyewitnesses to Mr. Gray's death.[30]   Defendant notified its insurer of the death the same day,[31] and defense counsel was engaged the following day to "protect the interests of Conner Industries."[32]

On March 19, 2019, less than two weeks after Mr. Gray's death, his family engaged counsel who sent a private investigator to Defendant's facility and Defendant told the private investigator to talk to its attorney.[33] Plaintiff sent its demand within 9 months of the incident and filed her case less than one year later.[34] Considering the unique facts in this case, the Court finds there was a real and imminent threat of litigation, and a substantial probability that litigation would ensue, soon after Mr. Gray's death.

### 2. Attorney-Client Privilege

Because jurisdiction in this case is based on the diversity of the parties, state law governs attorney-client privilege.[35]

Under Kansas law, the elements necessary to establish attorney-client privilege are:

(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently

---

[29] ECF No. 65, p. 5.
[30] ECF No. 67, p. 2.
[31] *See* § II, p. 3, *supra*.
[32] *See* § II, p. 3, *supra* and Document No. 1 which has now been produced to Plaintiff.
[33] See § II, pp. 3-4, *supra*.
[34] ECF No. 1.
[35] Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) ("state law governs the applicability and scope of attorney-client privilege in diversity actions").

protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[36]

But, not all communications involving attorneys are privileged.[37] The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[38] "Legal advice must predominate for the communication to be protected."[39]

> K.S.A. 60-246 defines client and communication as follows:
>
> (1) "Client" means **a person or corporation** or other association that, **directly or through an authorized representative**, consults an attorney or attorney's representative for the purpose of retaining the attorney or securing legal service or advice from the attorney in a professional capacity; and includes an incapacitated person who, or whose guardian on behalf of the incapacitated person, so consults the attorney or the attorney's representative in behalf of the incapacitated person.[40]

The Court will analyze Documents 1-8 and 12 regarding Defendant's claims of attorney-client privilege in § II(C)(4), *infra*.

Plaintiff argues even if the either attorney-client privilege or work product doctrine do apply, failure to adequately describe documents or information withheld in a privilege log and/or an excessive or unreasonable delay in providing a privilege log can waive an asserted privilege.

---

[36] *Marten v. Yellow Freight System, Inc*., No. 96-cv-2013-GTV, 1998 WL 13244, *5-6 (D. Kan. Jan. 6, 1998) (citing *State v. Maxwell*, 10 Kan. App. 2d 62, 63, 691 P.2d 1316, 1319 (1984)).
[37] *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir. 1995).
[38] *Marten*, 1998 WL 13244 at *6. *See also* K.S.A. § 60-426.
[39] *Taylor v. LM Ins. Corp.*, No. 19-1030, 2019 WL 5696861, *5 (D. Kan. Nov. 4, 2019).
[40] K.S.A. § 60-426(c)(1) (emphasis added).

### 3.     Waiver

Rule 26(b)(5)(A) requires a party to expressly assert claims of privilege and work product when it withholds otherwise discoverable information on those grounds.[41] It further requires the party to "describe the nature of the documents, communications, or tangible things not produced or disclosed."[42] A responding party has "the duty to timely provide the information required by Rule 26(b)(5)" and has "a duty when asserting privilege to describe the nature of the documents, communications, or tangible things not produced or disclosed as required by Fed.R.Civ.P. 26(b)(5)(A)(ii)."[43] A party withholding privileged material must provide the notice and information required by Rule 26(b)(5) when they are otherwise required to object or provide the discovery under the Federal Rules of Civil Procedure.[44] Withholding materials without the notice required by Rule 26(b)(5)(A) "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."[45]

Plaintiff argues Defendant's privilege log is deficient and untimely. In the District of Kansas, an inadequate privilege log may result in waiver of the privilege.[46] But, deficiencies in a privilege log do not automatically result in waiver of the privilege.

---

[41] *Quality Time, Inc.* 2012 WL 5499555 at *2.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Thahn Mai v. CSAA Fire & Casualty Ins. Co.,* No. 20-cv-1130, 2020 WL 6708650, *3 (D. Kan. Nov. 16, 2020), citing *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005)

In a prior opinion from this District, *White v. Graceland Coll. For Prof'l Dev. & Lifelong Learning, Inc.*,[47] Magistrate Judge David J. Waxse looked at several cases where waiver due to untimeliness of a privilege log was argued. There, he noted the few cases where the court found waiver based upon the untimely submission of a privilege log, the privilege log was prepared after the court ordered production of the documents.[48] Here, the Court has not previously made any rulings on either the timeliness or adequacy of the privilege log.

In *White,* the defendants served their discovery responses on January 22, 2008; the defendants did not serve their privilege log until February 19, 2008, two weeks after plaintiff filed her first motion to compel.[49] Judge Waxse found the relatively short delay in defendants providing its privilege log did not justify finding defendants had waived "any protection for the documents" listed on their privilege log.[50]

Here, Defendant responded to Plaintiff's First Request for Production on July 9, 2020 without serving a privilege log. The initial privilege log, including Documents 1-8, was produced on August 21, 2020 with Defendant's First Supplemental Responses to Plaintiff's First Request for Production.[51] The supplemental privilege log, including the

---

[47] *White v. Graceland Coll. For Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250 (D. Kan. 2008),
[48] *Id*. at 1267 *citing Williams v. Sprint/United Mgmt. Co.,* No. 03–2200, 2006 WL 3694862, at *3 (D. Kan. Dec. 13, 2006) (court found waiver where amended privilege log was prepared after the court was asked to rule on the issue and after entry of an order directing production of the documents); *Rural Water Sys. Ins. Ben. Trust v. Group Ins.,* 160 F.R.D. 605, 607 (D. Kan.1995) (court found waiver when privilege log was produced eleven months after the court was requested to determine the issue and after entry of the court's order directing production of the documents).
[49] *White,* 586 F. Supp. 2d at 1265.
[50] *Id.* at 1267.
[51] *See* §. II, p. 3, *supra*.

redactions to Document 12, was produced on December 8, 2020. THE COURT FINDS the delay in producing the first privilege log, a little over a month after Defendant's initial response to Plaintiff's First Request for Production, is neither unreasonable nor excessive. Where there is no indication Plaintiff asked Defendant to provide additional information in its privilege log and the Court has not previously ruled on either the timeliness of the supplemental privilege log, THE COURT FINDS Defendant has not waived privileges for the documents listed in its supplemental privilege log on the basis of either timeliness or adequacy.

### 4. Documents 1-8 and 12

In line with the above standards, the Court carefully reviewed the documents associated with supplemental privilege log entries 1-8 and 12 *in camera* and concludes Defendant properly withheld or redacted most of the documents. The Court reviewed the documents individually, including a page by page discussion of the claims notes during the January 20, 2021 conference, and made the following oral rulings regarding their production.

- **Document No. 1 -** March 8, 2019 email chain. The first email is between Kenneth Sommers, an adjuster at Travelers, and Perry Henry at Defendant, Conner Industries, which copies counsel, John Woolf. Mr. Sommers advises Mr. Henry Travelers contacted Mr. Woolf to "protect the interests of Conner Industries" and to expect his call. The second email is from Mr. Woolf to Mr. Henry saying he left a voice message and to call him.

THE COURT FINDS this introduction of Mr. Woolf to Defendant by its insurer is not a confidential communication made to obtain legal advice and ORDERS this document shall be produced.

13

- **Document No. 2** – March 11, 2019 email from counsel, John Woolf to Kenneth Sommers, an adjuster at Travelers. The email discusses counsel's investigation of the incident.

Although prepared just days following the death of Stephen Gray, the Court has previously found, based on the unique facts of this case, there was a real and imminent threat of litigation, and a substantial probability litigation would ensue very shortly after the time of Mr. Gray's death. THE COURT FINDS the email contains legal advice, as well as counsel's strategy and mental impressions. The email was prepared in anticipation of litigation, is protected by the work product doctrine, and shall not be produced.

- **Document No. 3** – March 11, 2019 memorandum prepared by counsel, John Woolf, following his inspection of Defendant's facilities. The memorandum is called a "Confidential Memorandum" regarding "Observations of the Sawdust Disposal System," and it is marked "Confidential Work Product" and "Attorney-Client Privileged."

THE COURT FINDS the memorandum includes Mr. Woolf's mental impressions, it was prepared in anticipation of litigation, is protected by the work product doctrine, and shall not be produced.

- **Document No. 4** – Chronology prepared by counsel, John Woolf, contemporaneously with Document No. 3, after his inspection of Defendant's facilities. The privilege log describes the document as "Defense Counsel Memorandum regarding Accident Investigation - Insurance Company File containing attorney work product, attorney-client privileged communications, and materials in anticipation of litigation, not prepared in the ordinary course of business."

THE COURT FINDS the document contains counsel's mental impressions, discusses an open legal question, and sets out legal advice sought and provided to Defendant's corporate representatives. It was prepared in anticipation of litigation, is protected by the work product doctrine, and shall not be produced.

- **Document No. 5** – March 15, 2019 email from counsel, John Woolf, to Kenneth Sommers, an adjuster at Travelers, regarding Defendant's report to OSHA and discussing Defendant's commercial lease on the property where Defendant's facility is located. The commercial lease discussed has been produced to Plaintiff.

THE COURT FINDS the email from Mr. Woolf to his client, as defined by K.S.A. 60-246, provides legal advice, is protected by the attorney-client privilege, and shall not be produced.

- **Document No. 6** – March 18, 2019 email from counsel, John Woolf, to Kenneth Sommers. Mr. Woolf is forwarding Stephen Gray's obituary and photograph, as well as information about Mr. Gray's horse training facility. The attachments have all been previously produced to Plaintiff. Mr. Woolf forwards the documents without providing legal advice. Although the information provided with the email may have been gathered as part of Mr. Woolf's investigation, the email does not contain his mental impressions.

THE COURT FINDS this document is not protected by either the attorney-client privilege or the work product doctrine and ORDERS this document to be produced.

- **Document No. 7** – March 22, 2019 email chain. The first two emails in the chain are between John Woolf and Andrew Geren at DeVaughn James. Email between opposing counsel are clearly not privileged. Mr. Woolf then forwards the two emails to Kenneth Sommers at Travelers with the message "FYI."

At the hearing Defendant conceded this email was not privileged. THE COURT ORDERS this document to be produced.

- **Document No. 8** – Liability Claims File Analysis. This document was prepared by Travelers in the course of an investigation conducted largely by counsel or otherwise undertaken under the supervision of counsel. The document contains reserve information which Plaintiff has advised the Court it does not seek. The document also includes the mental impressions of the adjuster, as well as information provided by counsel from his investigation.

THE COURT FINDS this document was prepared in anticipation of litigation, is protected by the work product doctrine, and shall not be produced.

- **Document No. 12** – Claims File Notes. Defendant produced this document with redactions. Only those pages with redactions were reviewed by the Court.

  - **DEFT1090** – This page has two redactions. The first is a December 9, 2019 Adjuster Note regarding the adjuster's telephone call with counsel. The note indicates Mr. Woolf is relaying information from, commenting on, and providing legal advice regarding the demand from Plaintiff.

15

> The second redaction on DEFT1090 is a December 9, 2019 email from John Woolf to Steve Foster at Defendant, Conner Industries, and Robert Killingsworth, the new adjuster assigned to this claim at Travelers, following up on prior telephone call. The email includes legal advice regarding Plaintiff's demand.

THE COURT FINDS both entries are protected by attorney-client privilege, and they are appropriately redacted.

> o **DEFT1092-93** – August 12, 2010 email from John Woolf to Perry Henry at Defendant, Conner Industries, and Robert Killingsworth at Travelers. Mr. Woolf is providing legal advice on the pre-suit handling of the claim.

THE COURT FINDS this document is protected by attorney-client privilege, and it is appropriately redacted.

> o **DEFT1093-94** – August 8, 2019 email from John Woolf to Robert Killingsworth at Travelers regarding preparation for the parties' joint inspection.

THE COURT FINDS the document was prepared in anticipation for litigation and it is protected by the work product doctrine. Additionally, THE COURT FINDS the email from Mr. Woolf to his client, as defined by K.S.A. 60-246, provides legal advice, is protected by the attorney-client privilege, and is appropriately redacted.

> o **DEFT1094** – This page has two redactions. The first redaction is of an August 8, 2019 email from Robert Killingsworth to John Woolf seeking legal advice, which is given in the email at DEFT1093-94 addressed above.

THE COURT FINDS the email from the client, as defined by K.S.A.§ 60-246, seeks legal advice, is protected by the attorney-client privilege, and is appropriately redacted.

> The second redaction is a July 12, 2019 email from Robert Killingsworth to John Woolf regarding Killingsworth knowing Dustin DeVaughn from Lawyers League Softball.

THE COURT FINDS this email is not a confidential communication made to obtain legal advice and ORDERS Defendant to reproduce DEFT1094 with this entry unredacted.

16

- o **DEFT1095** – This page has two redactions. The first is a July 12, 2019 email from John Woolf to Robert Killingsworth providing legal advice regarding his communication with counsel for Plaintiff, the status of OSHA filings, and Defendant's facility.

  The second redaction is a July 9, 2019 email from Robert Killingsworth to John Woolf requesting the legal advice given in the July 12, 2019 email above.

THE COURT FINDS both emails are communications between counsel and his client, as defined by K.S.A. § 60-246, are seeking or giving legal advice, are protected by the attorney-client privilege, and are appropriately redacted.

- o **DEFT1096** – June 11, 2019 internal Travelers email regarding reinsurance issues. The information provided is akin to the reserve information which Plaintiff agreed she is not requesting. It also contains the mental impressions of the Senior Claims Analyst.

THE COURT FINDS this email is protected by the work product doctrine and is appropriately redacted.

- o **DEFT1097** – May 8, 2019 email from Robert Killingsworth to John Woolf, copied to Perry Henry at Defendant, Conner Industries. The email addresses the reassignment of the claim from Kenneth Sommers to Robert Killingsworth. The email includes the mental impressions of the new adjuster.

THE COURT FINDS this document was prepared in anticipation of litigation, is protected by the work product doctrine, and is appropriately redacted.

- o **DEFT1098** – April 5, 2019 Adjuster Notes regarding reserves. Plaintiff's counsel advised the Court he does not seek reserve information. The notes additionally contain the mental impressions of the adjuster.

THE COURT FINDS this document was prepared in anticipation of litigation, is protected by the work product doctrine, and is appropriately redacted.

- o **DEFT1099** – This page has two redactions. The first is March 19, 2019 notes of the adjuster regarding a voice message from counsel advising an

17

> investigator sent by Plaintiff's counsel's visited Defendant's facilities. The investigator was told to contact defense counsel.

THE COURT FINDS that information was included in Defendant's timeline in its Supplemental Answer to RFP No. 32. If the information was protected, the protection has been waived.

> The second redaction is a March 19, 2019 email from John Woolf to Kenneth Sommers. This is the same email as Document No. 6, which the Court ordered to be produced.

THE COURT ORDERS Defendant to reproduce DEFT1099 with these entries unredacted.

> - **DEFT1102** – March 15, 2019 email from John Woolf to Kenneth Sommers. This is the same email as Document No. 5, which the Court determined is protected by attorney-client privilege and the work product doctrine.

THE COURT FINDS this document is appropriately redacted.

> - **DEFT1102-03** – Chronology prepared by defense counsel. It is the same as Document No. 4, which the Court has determined is protected by both the attorney-client privilege and the work product doctrine.

THE COURT FINDS this document is appropriately redacted.

> **DEFT1103-04** – "Confidential Memorandum" prepared by defense counsel. It is the same as Document No. 3, which the Court has determined is protected by the work product doctrine.

THE COURT FINDS this document is appropriately redacted.

III. **Conclusion**

Based on the foregoing and considering the Court's *in camera* review of the documents presented, such documents shall be exchanged in accordance with the Court's rulings as noted above.

**THEREFORE**, Plaintiff's Motion to Compel Discovery Responses (**ECF No. 65**) is **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth above.

**IT IS SO ORDERED**.

Dated February 19, 2021.

/s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge