IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA, KANSAS

| | |
|---|---|
| RUTH GRAY, INDIVIDUALLY and as PERSONAL REPRESENTATIVE and SPECIAL ADMINISTRATOR OF THE ESTATE OF STEPHEN GRAY, <br><br> Plaintiffs, <br><br> vs. <br><br> CONNER INDUSTRIES, INC., <br><br> Defendant. | Case No. 6:20-CV-1037-TC-GEB |

**PLAINTIFF'S MOTION TO STRIKE THE SUPPLEMENTAL REPORT AND ERRATA SHEET OF DR. JOHN MCMASTER**

Plaintiff Ruth Gray, individually and as personal representative and special administrator of the Estate of Stephen Gray, by and through her counsel of record Dustin L. DeVaughn and Jeffrey Wilson of DeVaughn James Injury Lawyers respectfully submits this Motion to Strike the Supplemental Report and Errata Sheet of Dr. John McMaster.

**Nature of the Present Motion**

Stephen Gray drowned in sawdust on March 7, 2019 at Defendant's Valley Center, KS facility. During his autopsy, sawdust was found in his mouth, trachea, esophagus, and deep into his lungs. Plaintiff has retained Dr. Scott Bledsoe, who opines that the presence of sawdust in Mr. Gray's lungs proves that Mr. Gray was conscious while he was drowning because only panicked breathing could have driven the sawdust that deep. Defendant has retained Dr. John McMaster who offers opinions of his own.

Plaintiff deposed Dr. McMaster. In his errata sheet, Dr. McMaster attempted to insert new, undisclosed opinions into his deposition transcript. Specifically, Dr. McMaster sought to opine

1

that the EMS personnel could have been responsible for the sawdust in Mr. Gray's lungs. Plaintiff moves to strike his errata sheet in that regard. On February 18, 2022, the day discovery closed, Defendant served a supplemental report from Dr. McMaster. Dr. McMaster's supplemental report contains the same undisclosed opinion based on records he reviewed to prepare his first report, and also improperly attempts to strengthen or deepen his original report. Plaintiff moves to strike the supplemental report in full.

The following exhibits are attached in support of this motion:

- Exhibit 1—Defendant's amended expert witness disclosure
- Exhibit 2—Dr. McMaster's original report
- Exhibit 3—Dr. McMaster's deposition transcript
- Exhibit 4—Dr. McMaster's errata sheet
- Exhibit 5—Dr. McMaster's supplemental report
- Exhibit 6—Medical literature produced by Plaintiff.

**I.       Statement of Facts Relevant to this Motion.**

Defendant designated its experts on September 27, 2021. *See* Doc. 121. Dr. John McMaster was designated to testify to the contents of his report, Exhibit E to Defendant's expert designation. Exhibit 1, Defendant's Amended Expert Designation, p. 2. Dr. McMaster's report is attached as Exhibit 2. Dr. McMaster lists the documents reviewed to prepare his report on page 2. Among those records are the Sedgwick County EMS records. Exhibit 2, p. 2. Dr. McMaster's report contains opinions that Mr. Gray was impaired at the time of his death based on his postmortem blood alcohol level of 0.039%, and that Plaintiff's retained medical expert's opinion regarding conscious pain and suffering are "mere speculation and conjecture." *Id*. at p. 3. Nowhere in Dr. McMaster's report does he offer an alternative cause for the sawdust being found in Mr. Gray's

lungs.

On November 15, 2021, Plaintiff deposed Dr. McMaster. *See* Doc. 128. Doctor McMaster was asked at his deposition whether he was aware of any undiscussed support for his opinions. Exhibit 3, Deposition of Dr. McMaster, 109:9-11. His response was that he could not think of any. *Id*. Dr. McMaster's explanation for the sawdust being present in Mr. Gray's lung is that he could have had a cardiac event that rendered him unconscious but still breathing. According to Dr. McMaster, any level of respiration would have been sufficient to pack Mr. Gray's lungs with sawdust. Exhibit 3, 129:10-12. No mention was made in his deposition of any other possible cause for this autopsy finding. On December 29, 2021, Dr. McMaster submitted an errata sheet making many corrections and additions to his transcript. Exhibit 4, Errata Sheet. Among them was an addition to page 125, line 21. *Id*. Dr. McMaster was asked why he disagreed with Dr. Bledsoe's opinion. Exhibit 3, 125:9-18. In response Dr. McMaster stated one can lose consciousness without losing respiratory drive and bring sawdust into one's lungs. *Id*. at 125:19-21. Dr. McMaster's Errata sheet makes and "addition to clarify answer" to line 21 with the following language:

> In addition, the EMS records indicate paramedics attempted to ventilate Mr. Gray and placed and airway tube, which could have resulted in sawdust inside Mr. Gray's mouth being forced into the lungs.

Exhibit 4, p. 2.

Dr. McMaster also sought to add that new opinion to Page 130, line 13, and added additional support in the form of a medical article produced before his deposition by Plaintiff's retained expert. *Id*., pp. 2-3. Finally, Dr. McMaster also made an "addition to clarify answer" to page 53, line 23. *Id*. at 2.

At his deposition, it was established that Dr. McMaster had none of the information

necessary to determine whether the ethanol in Mr. Gray's system was the result of postmortem alcohol production before writing his report. *E.g.* Exhibit 3, 22:16-22; 81:8-20; 84:4-21; 86:18-23; 98:5-24; 99:24 – 100:10; 101:8-17. Nonetheless, he felt confident enough to write his report without the information necessary to determine whether postmortem alcohol production had occurred. *Id.* at 103:7-22. Importantly, as discussed below, Dr. McMaster never asked or made any effort to determine if such information existed or was available. *Id.* Dr. McMaster also made no effort to look for medical literature aside from the one article disclosed and a page from a medical review officer manual. *Id.* at 42:18-20; 68:1-13; 130:15-20.

On January 11, 2022, Plaintiff disclosed some medical literature that Plaintiff intends to use at trial for impeachment purposes. All of the medical literature was published more than one year before Dr. McMaster's report was disclosed. Evidently, it became apparent after this disclosure that Dr. McMaster's opinions needed some bolstering. On January 19, 2022, Defendant filed a notice of intent to subpoena documents from the Sedgwick County Regional Forensic Science Center ("RFSC") related to the toxicology testing. Doc. 136. Then, on February 18, 2022, the day discovery closed, Defendant served Dr. McMaster's "supplemental" report. Exhibit 5, Supplemental Report.

The supplemental report lists new documents reviewed by Dr. McMaster—the documents responsive to Defendant's subpoena to the RFSC and the medical literature produced by Plaintiff on January 11, 2022. Exhibit 5, p. 1. Dr. McMaster's supplement contains two substantive paragraphs. The first attempts to bolster or strengthen Dr. McMaster's original opinions regarding alcohol:

> Based upon this review, I was unable to identify any added information that contradicts or disputes the opinions I have previously provided on this manner. The additional medical literature, which I understand was disclosed by the Plaintiff in this

> case, supports my prior expert report and opinions dated September 20, 2021, and my deposition testimony given on November 15, 2021. Furthermore, indisputable medical and scientific evidence exists confirming Mr. Gray had recent pre-mortem consumption of alcohol. The post-mortem alcohol levels reported within the blood and vitreous confirms within a reasonable degree of medical certainty antemortem ingestion and metabolism of alcohol and is not representative of the elimination phase of alcohol ingestion. Furthermore, a detailed review of the file materials from the Regional Forensic Science Center supports my opinion that there was no scientific or forensic evidence of post-mortem decomposition, putrefaction, or microbial alcohol production.

Exhibit 5, p. 1.

The second paragraph adds a new opinion in line with his errata sheet. Specifically, Dr. McMaster reviewed the documents he originally reviewed for his report and made another opinion not previously disclosed. Dr. McMaster also tries to strengthen his original opinion:

> I have also reviewed again the Sedgwick County EMS records relative to Mr. Gray's accident. Such records indicate that the pre-hospital responders intubated Mr. Gray and utilized bag ventilation as part of their resuscitative efforts. This is verified by scene photos and corroborated within the Sedgwick County emergency response records. The mechanism of intubation and ventilation would have contributed to the post-mortem finding of sawdust in the bronchi and bronchioles. This further supports my conclusion that Dr. Bledsoe's report and opinion that Mr. Gray would have been aware of the fact he was going to die or struggling, especially due to any finding of sawdust in Mr. Gray's bronchi or bronchioles, is mere speculation and conjecture unsupported by the factual evidence or a scientifically valid methodology.

Exhibit 5, p. 2.

This is not a proper supplemental report for a number of reasons and Plaintiff moves for the Court to strike Dr. McMaster's supplemental report in full.

## II.     Arguments & Authorities.

Some of Dr. McMaster's errata changes must be stricken because they are an attempt to change or clarify his testimony without sufficient justification. Similarly, Dr. McMaster's supplemental

5

report must be stricken because it is not really a supplemental report, only attempts to strengthen his original opinions, and is based solely on documents and information that were available before he was first designated as an expert.

### A. Dr. McMaster's errata changes listed above are material and do not pass the *Burns* test

Like all deponents, Dr. McMaster had 30 days to review his deposition transcript and make changes. Fed. R. Civ. P. 30(e)(1). But this window does not entitle him to turn a deposition into a take home test. *Wurm v. Ford Motor Co.*, No. 18-cv-2322-HLT, 2020 WL 1547852 at *2 (D. Kan. April 1, 2020). "The Tenth Circuit takes a 'dim view' of substantive changes to deposition testimony made under Rule 30(e)." *Id*. (citing *BancFirst v. Ford Motor Co.*, 422 F. App'x 663, 666 (10th Cir. 2011)). Under this approach, "Rule 30(e) only permits correcting transcription errors; therefore, it does not authorize changes because the deponent lied, misspoke, or otherwise wants to change or *clarify* his testimony." *Id*. (citation omitted) (emphasis added). The first question is whether the changes are "material." *Id*. If they are, the change is only allowed if it meets the criteria set out in *Burns v. Board of County Commissioners of Jackson County.*, 330 F.3d 1275, 1282 (10th Cir. 2003). The *Burns* court held errata changes are evaluated using the same factors to identify sham affidavits. *Burns*, 330 F.3d at 1282. "Those factors are (1) whether the person was cross examined; (2) whether the corrections are based on newly discovered evidence; and (3) whether the corrections are aimed at obvious confusion as opposed to indecisiveness or inconsistent deposition testimony." *Wurm*, 2020 WL 1547852 at *2.

Dr. McMaster's errata changes are material in that they attempt to add an entirely new theory to explain a fact central to both Plaintiff and Defendant's case. Dr. McMaster was not cross examined at his deposition, but that is only because defense counsel chose not to. Exhibit 3, 136:18-21. So the first element of the *Burns* test is not satisfied.

6

Dr. McMaster's errata sheet corrections are not based on newly discovered evidence. The corrections are based on EMS records he reviewed to write his first report, and medical literature produced by Plaintiff's retained expert well in advance of Dr. McMaster's deposition. Exhibit 4, p. 2. So the second element of the *Burns* test is not satisfied.

Dr. McMaster's deposition transcript and errata sheet demonstrate his changes are not the product of confusion, obvious or not. His changes are simply inconsistent with the deposition testimony in a substantial and material way. So the third element of the *Burns* test is not satisfied. Therefore, Dr. McMaster's errata changes noted above should be stricken.

B. **Dr. McMaster's supplemental report is not correcting an incomplete expert disclosure or an incorrect expert disclosure, and so the supplement is not allowed.**

Supplements are made when "the party learns in some material respect the disclosure … is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Supplements are proper "to correct misleading or false information." *Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192 at *3 (D.Kan. July 14, 2005). "Rule 26 does not … bestow upon litigants unfettered freedom to rely on supplements produced after a court imposed deadline, even if the rule's pretrial time limit is satisfied." *Id*. (quoting *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (D.Ga.2001)). The obligation to supplement does not give rise to the ability "to reopen discovery, find 'new facts,' [and] generate new expert reports." *Id*. (citation omitted).

In the present case, there is nothing incomplete or incorrect on the face of Dr. McMaster's original report. To be clear, Plaintiff maintains the entirety of his report is incorrect. But this "supplement" does nothing to correct an error or omission based on new information. Therefore, it is not a supplemental report at all as they can only be made under the limited circumstances found in Rule 26(e).

C. **Defendant cannot strengthen or deepen Dr. McMaster's opinions using a**

7

**supplemental report**

"A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *In re Cessna 208 Series Aircraft Prods. Liability Litig.*, No. 05-md-1721-KHV, 2008 WL 4937651 at *2 (D. Kan. Nov. 17, 2008) (citation omitted).

*Grindle v. Cinetopia Prairifire, LLC* is instructive here. In *Grindle*, Judge Gale excluded a supplemental expert report that attempted to bolster the expert's original opinions as a more detailed response to deposition questioning. No. 20-2092-KHV-KGG, 2021 WL 1693894 at *2 (D. Kan. April 29, 2021). The Plaintiff served the supplemental report five weeks before the close of discovery. *Id*. at *1. The expert had conducted additional analysis to "further substantiate" his opinions. *Id*. The Plaintiff contended that the supplemental report did not provide any new opinions, but "is merely a more detailed response" to a line of questioning at the expert's deposition. *Id*. at *2.

Dr. McMaster's supplemental report is similar in that he analyzes documents that he could have considered before writing his original report. Most importantly, his supplemental report merely states that, after review, he was "unable to identify any added information that contradicts or disputes the opinions I have previously provided on this manner (sic)." Exhibit 5, p. 1. He goes on to say the medical literature produced by Plaintiff "supports my prior expert report and opinions … and my deposition testimony." *Id*. He then says the same about the RFSC documents. *Id*. And he finished his report by inserting a new opinion and claiming documents he reviewed before "further supports my conclusion." *Id*. at p. 2.

This is a classic example of an attempt to strengthen or deepen opinions expressed in the

8

original expert report, and Dr. McMaster's supplemental report therefore exceeds the bounds of permissible supplementation.

### D. Defendant cannot proffer opinions based on information that was available before the original report was disclosed

Expert reports may be supplemented to correct something that was wrong in the original, or to complete an otherwise incomplete report "based on information *that was not available at the time of the initial disclosure.*" *Cessna*, 2008 WL 4937651 at *2 (emphasis added). "The basic purpose of supplementary disclosures under Rule 26(e)(2) is to prevent prejudice or surprise, not to provide an extension of the expert designation and report production deadline." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (citations, internal quotation marks and alterations omitted). "[A] lack of diligence in pursuing information that could have been available at the time of the original report does not mean the same as information that was not available." *Spirit Aerosystems, Inc. v. SPS Techs., LLC*, No. 9-cv-1144-EFM-KGG, 2013 WL 6196314 at *6 (D. Kan. Nov. 27, 2013). Supplemental reports may not be used to "sandbag one's opponent with issues that should have [been] included in the original report." *Id.* at *7.

Information is "available" if it is "reasonably obtainable." *Finch v. Wichita*, No. 18-1018-JWB-ADM, 2019 WL 3202239 at *3 (D. Kan. July 16, 2019). Medical literature published before an expert's report is disclosed is "available" at the time of the report, regardless of whether the expert reviewed it or had it in hand. *In re Gadolinium*, No. 08-GD-50000, MDL No. 1909, 2010 WL 8334226 at *3 (N.D. Ohio Dec. 6, 2010).

In this case, Dr. McMaster's new opinion about the EMS attempting to intubate Mr. Gray is based on documents not only available to Dr. McMaster, but actually reviewed by him to prepare his original report. Exhibit 2, p.   He did not mention this new opinion in his report or his deposition, and waited until his errata sheet and supplemental report to do so. That part of his

9

supplemental report is clearly improper.

As for Dr. McMaster's attempt to bootstrap some reliability to his alcohol opinions, the medical literature produced by Plaintiff and the documents from the RFSC were "available" to him at the time of his original report. All of the literature was published before his report was written. Exhibit 6, p. 2 (1996), p. 39 (2020), p. 48 (2001), p. 52 (2007). Dr. McMaster's lack of diligence in searching for and considering other medical literature does not render those articles unavailable. Further, the documents subpoenaed from the RFSC have been in existence since 2019. Defendant's and Dr. McMaster's lack of diligence in obtaining them for Dr. McMaster's review does not render them unavailable at the time of Dr. McMaster's original report. The reason the RFSC documents were not requested sooner appears to be that Dr. McMaster did not feel he needed them to render his original report. Exhibit 3, 103:7-22. In the months between his deposition and the disclosure of the medical literature Plaintiff intends to use at trial, no effort was made to subpoena or obtain these documents. Therefore, the RFSC documents and medical literature were all available to Dr. McMaster when he wrote his original report. Consequently, he is not allowed to render a supplemental opinion out of time based on such documents.

E. **Reopening Discovery or Giving Leave for Plaintiff to Redepose Dr. McMaster or name a rebuttal expert is not an adequate solution.**

In *Spirit Aerosystems*, Spirit suggested that any prejudice from the supplemental report can be cured by allowing additional discovery. 2013 WL 6196314 at *8. But, as Judge Gale noted, this would disrupt the pretrial proceedings. *Id*. Further, "allowing more discovery to accommodate [information that could have been gathered on time] defeats the purpose of the expert report deadlines and impacts this Court's ability to manage its docket in a just and orderly manner." *Id*.

> In this case, the offer to allow [McMaster] to be re-deposed does not cure the problem. This would effectively result in the reopening of discovery which effectively undermines the very reason for setting

10

>    expert deadlines in a scheduling order. That result leads to a procedure whereby experts submit "preliminary" reports, followed by new "supplemental" reports and the expert's final product is in flux up to the very day of trial. This circumvents the disclosure requirements of the federal rules and the scheduling order.

*Aid for Women*, 2005 WL 6964192 at *4.

The *Aid for Women* court went on to note that reopening discovery would prejudice plaintiff by requiring further discovery, rebuttal experts, and then more discovery. *Id*. As noted at the pretrial conference held March 11, 2022, Plaintiff should not be put in a position of having to *redepose* Dr. McMaster, hire a rebuttal expert, and pay for both. Instead, Dr. McMaster should have reviewed or searched for medical literature pertinent to his analysis, requested documents from the RFSC and issued his report. His lack of diligence in doing so does not render his supplemental report appropriate under the Federal Rules of Civil Procedure.

> F. **In the alternative, if the Court does not strike Dr. McMaster's supplemental report, Plaintiff requests leave to designate a new rebuttal expert to oppose Dr. McMaster.**

Plaintiff contends additional discovery on this supplemental report is neither warranted nor an adequate remedy to the improper and untimely supplemental report. However, if the supplemental report is allowed, Plaintiff sees no other option. Therefore, if the supplemental report is not excluded, Plaintiff requests leave to redepose Dr. McMaster and 60 days to locate, hire, and prepare a rebuttal report from a toxicologist or other suitable expert.

WHEREFORE, Plaintiff prays that the Court deny Defendant's motion, and for her fees incurred herein.

Respectfully submitted,

DeVaughn James Injury Lawyers

By: /s/ Jeffrey A. Wilson
Jeffrey A. Wilson, #26527

11

Dustin L. DeVaughn, #16559
3241 N Toben
Wichita, KS 67226
Tel: (316) 977-9999
Fax: (316) 425-0414
E-mail: jeffwilson@devaughnjames.com
E-mail: ddevaughn@devaughnjames.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of March, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to those parties that have registered in this case.


By: /s/ Jeffrey A. Wilson
Jeffrey A. Wilson, #26527