## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RUTH GRAY, Individually and as )
Personal Representative and )
Special Administrator of the )
Estate of Stephen Gray, )
             )
             **Plaintiff,** )
             )
vs. )         **Case No. 20-1037-TC-GEB**
             )
CONNER INDUSTRIES, INC., )
             )
             **Defendants.** )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Strike the Supplemental Report and Errata Sheet of Dr. John McMaster (**ECF No. 147**). The Court held oral argument on April 25, 2022. Having reviewed the briefs of the parties and having heard the arguments of counsel, for the reasons set forth below, Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

## I.    Background[1]

Plaintiff Ruth Gray, individually and as the personal representative and special administrator of the Estate of Stephen Gray, filed this action in February 2020 seeking damages alleging the wrongful death of her husband, Stephen Gray. Defendant Conner

---

[1] Unless otherwise indicated, the information recited is taken from the parties' pleadings (Pl.'s Compl., ECF No. 1; Def.'s Answer, ECF No. 7), the parties' Planning Report (maintained in chambers file), and the briefing regarding the instant motion (ECF Nos. 147, 148). This background information should not be construed as judicial findings or factual determinations.

Industries, Inc. operates a lumber, custom pallet, and custom crate manufacturing facility in Valley Center, Kansas. One byproduct of Defendant's operations is sawdust which is stored in a bin outside Defendant's facility. Mr. Gray periodically obtained sawdust from Defendant's Valley Center facility for years. On one such occasion in March 2019, Mr. Gray went to Defendant's facility to load sawdust in his trailer. He died when he somehow became engulfed in the sawdust.

In this wrongful death and survival action, citing diversity jurisdiction under 28 U.S.C. § 1332, Plaintiff claims Defendant is negligently liable for the wrongful death of her husband. She claims punitive damages for Defendant's gross negligence and reckless disregard, which caused her husband's conscious pain and suffering. Defendant denies liability, asserts the comparative fault of Mr. Gray (ECF No. 21), and denies the damages Plaintiff asserts are casually related or of the nature and extent alleged.

A full Scheduling Order was entered in June 2020,[2] but it was later amended to a phased discovery plan.[3] Phase I and Phase II were complete when discovery issues related to Phase III commenced. A Phase III Scheduling Order was entered in January 2021, addressing all remaining deadlines, including expert discovery.[4] The parties sought to jointly amend the schedule in August 2021[5] and again in November 2021.[6] The August

---

[2] ECF No. 16.
[3] *See* Phase II Order, ECF No. 42.
[4] ECF No. 73.
[5] ECF No. 116.
[6] ECF No. 125.

2021 order[7] extended Defendant's deadline to disclose experts no later than September 27, 2021.  Pursuant to the Court's November 8, 2021 Order,[8] discovery was set to close February 18, 2022.  But when the Court held an initial Pretrial Conference on March 11, 2022, the parties indicated discovery was not yet complete.

There were potential issues related to document production associated with the 30(b)(6) deposition of Defendant, the supplemental report of Defendant's expert and potential need for a rebuttal expert, and a subpoena to a third party. Based on the arguments of counsel, particularly as to the expert disclosures, the Court reopened discovery until April 8, 2022,[9] and orally set a deadline regarding expert disclosures of 10 days prior to the close of discovery, March 29, 2022. At the time, the Court was unequivocally clear the discovery deadline would not be further extended.

## II.    Plaintiff's Motion to Strike the Supplemental Report and Errata Sheet of Dr. John McMaster (ECF No. 147)

Plaintiff moves to strike portions of Defendant's expert's errata sheet as well as his entire February 18, 2022 supplemental report. Defendant designated Dr. John M. McMaster, M.D., FAAFP, FACEP, FAADEP, CIME[10] on September 27, 2021[11] and amended its designation a day later.[12] In its amended designation. Dr. McMaster was

---

[7] ECF No. 117.
[8] ECF No. 126.
[9] ECF No. 146.
[10] ECF No. 147-1.
[11] ECF No. 120.
[12] ECF No. 121.

expected to provide testimony on issues and topics related to his September 20, 2021 report.[13] Plaintiff took the deposition of Dr. McMaster on November 15, 2021.[14] Dr. McMaster signed his errata sheet on December 29, 2021[15] requesting certain changes which Plaintiff objects are new, undisclosed opinions on the basis that it is improper use of an errata sheet. Additionally, after Plaintiff disclosed certain medical literature in its January 11, 2022 supplemental Rule 26 disclosures,[16] Dr. McMaster supplemented his report on February 18, 2022,[17] the day of the close of Phase II discovery. Dr. McMaster's supplemental report includes opinions related to review of the medical literature disclosed by Plaintiff in January 2022, as well as adopting the change to his deposition testimony in the errata sheet that is at issue.

### A.     Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Although not addressed in the parties' briefing, based on review of the parties' correspondence, and given the prior discussion of the topic of the motion to compel, the Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

---

[13] ECF No. 147-2.
[14] ECF No. 147-3.
[15] ECF No. 147-4.
[16] ECF No. 148-2.
[17] ECF No. 147-5.

## B.     Parties' Positions

### 1.     Plaintiff's Contentions

Plaintiff alleges Mr. Gray's autopsy found sawdust in his mouth, trachea, esophagus, and deep into his lungs. Plaintiff designated Dr. Scott Bledsoe who has opined the presence of sawdust in Mr. Gray's lungs proves he was conscious while drowning in sawdust because only panicked breathing would have moved the sawdust that deep. Plaintiff argues Dr. McMaster attempted to insert two new, undisclosed opinions regarding the presence of sawdust in Mr. Gray's lungs into his deposition via his errata sheet. Dr. McMaster's February 18, 2022 supplemental report contains the new opinions set out in the errata sheet. Plaintiff argues the changes in the errata were material and failed to meet the criteria set out in *Burns v. Bd. of Cnty. Comm'rs,*[18] the new opinions in the supplemental disclosure do not correct an incomplete or incorrect disclosure, and the opinions in both the errata and in the supplemental disclosure should be stricken.

On January 11, 2022, Plaintiff's final supplement to her Rule 26 disclosures, disclosed medical literature regarding postmortem alcohol production which she intends to use at trial for impeachment purposes. Shortly thereafter, on January 19, 2022, Defendant filed a notice of intent to subpoena documents related to the toxicology testing from the Sedgwick County Regional Forensic Science Center ("RFSC"). Plaintiff alleges Dr. McMaster, in his supplemental report, attempts to bolster his original opinions regarding

---

[18] 330 F.3d 1275, 1282 (10th Cir. 2003).

alcohol with additional opinions based upon the medical literature Plaintiff produced and the additional materials produced by the RFSC, all materials which Plaintiff alleges were available when Dr. McMaster prepared his initial report. As such, Plaintiff argues the opinions regarding alcohol in the supplemental report do not correct an incomplete or incorrect disclosure and should be stricken.

### 2.     Defendant's Response

Defendant contends the changes to the errata sheet are not related to a material fact at issue in a pending or anticipated summary judgment motion and are therefore permissible under Fed. R. Civ. P. 30(e) and applicable caselaw. Regarding the supplemental report, Defendant further contends the opinions are in direct response to Plaintiff's production of the medical literature after his initial report was produced and allowing the supplemental report to stand is justified and harmless.

### C.     Discussion

### 1.     Errata Sheet

Fed. R. Civ. P. 30(e)(1)(B) allows a deponent to review the transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them. Below are the two changes to the errata sheet at issue, the reason for making the change, and the original question and answer from Dr. McMaster's deposition.

Page 125, lines 9-21:

Q.     Well, Doctor, I mean, you know where I am going

> with this, Dr. Bledsoe testified that the only
> way to get sawdust down into the proximal
> bronchioles of the lung was if he was conscious
> and kind of panicking and breathing really hard
> to try to get that sawdust – or get breath into
> his lungs. Do you remember that?
>
> A.    I remember that and I disagree with that
> opinion.
>
> Q.    Okay. How so, why?
>
> A.    Again, if you lose consciousness, you can still
> have respiratory drive and bring sawdust into
> your upper airway and large airways of the lung.

Dr. McMaster provided the following additional information to clarify his answer.

> In addition, the EMS records indicate paramedics attempted to
> ventilate Mr. Gray and placed an airway tube, which could
> have resulted in sawdust inside Mr. Gray's mouth being forced
> into the lungs.

Page 130, lines 2-13:

> Q.    So just to be clear, there's no medical
> Professional, no medical society, no medical
> Literature, nowhere else other than Dr. McMaster
> in this room that I can look at to determine the
> reliability of your opinion that Mr. Gray could
> have gotten sawdust down there unconsciously?
>
> A.    I think I have identified there probably exists
> medical literature out there, but I cannot
> direct you to it. If you would like me to
> investigate it on your behalf, please let me
> know.

Dr. McMaster provided the following additional information to clarify his answer.

> See the additional clarifying statement to p. 125, l. 21. Further,
> see the article relied on by Dr. Scott Bledsoe, which states, "We
> conclude that, at the onset of CA, the respiratory neurons

> continue to generate normal breathing activity, despite the
> absence in pulmonary blood flow/cardiac output, which
> divorces breathing from its primary purpose of controlling
> pulmonary gas exchange." *Breathing Patterns During Cardiac
> Arrest,* Journal of Applied Physiology 109:405-411 (2010).

Defendant argues deposition changes are permitted as long as they do not interfere with a material fact issue on summary judgment. The Court disagrees. The Tenth Circuit has "adopted a restrictive view" of the changes permitted under Fed. R. Civ. P. 30(e) and "take a dim view of substantive alteration of deposition testimony."[19] Under the more restrictive view, "Rule 30(e) only permits correcting transcription errors; therefore, it does not authorize changes because the deponent lied, misspoke or otherwise wants to change or clarify his testimony."[20] The "threshold question" in evaluating errata changes is whether the changes are material.[21] A change is material if it bears on an essential element of a claim or defense.[22] If the change is material, it is allowed only if it passes the "so called *Burns* test."[23] In *Burns v. Bd. of Cnty. Comm'rs,*[24] the Tenth Circuit held that Rule 30(e) deposition errata changes should be evaluated under the same factors used to evaluate sham affidavits. Those factors are: 1) whether the deponent was cross-examined; 2) whether the

---

[19] *BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.*, 422 Fed.Appx. 663. 666 (10th Cir. 2011).
[20] *Wurm v. Ford Motor Co.,* No. 18-2322-HLT, 2020 WL 1547852, at *2 (D. Kan. April 1, 2020) (quoting *Summerhouse v. HCA Health Servs. of Kan.,* 216 F.R.D. 502, 505 (D. Kan. 2003)).
[21] *Wurm,* at *2 (citing *Summerhouse* 216 F.R.D. at 508).
[22] *Id.*
[23] *Wurm,* at *2 (citing *Summerhouse* 216 F.R.D. at 508).
[24] 330 F.R.D. 1275, 1282 (10th Cir. 2003).

corrections are based on newly discovered evidence; and 3) whether the corrections are aimed at obvious confusion about the question being asked.[25]

Defendant cites to Judge Bostwick's decision in *Summerhouse v. HCA Health Servs. of Kan.*[26] decided just a few days after *Burns* in June 2003 and *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*[27] in support of his argument deposition changes are permitted as long as they do not interfere with a material fact issue on summary judgment. Judge Bostwick, reviewing *Burns* and other cases explicitly rejected *Pepsico* and its holding that the minority view of Rule 30(e), which the Tenth Circuit follows, only applies during the pendency of a summary judgment motion.[28] Other courts in this District have followed Judge Bostwick's ruling in *Summerhouse*.[29] Thus the Court finds the *Burns* factors should be applied if the changes are determined to be material, regardless of whether a motion for summary judgment is pending.

Regarding materiality, that issue rarely receives much, if any, analysis because a showing that the changed deposition testimony "bears on" an essential element of a claim or defense is such a low standard.[30] The Court finds both changes to Dr. McMaster's deposition testimony set out above, regarding the presence of sawdust in Mr. Gray's lungs

---

[25] *Wurm,* at *2; *Burns,* at 1282.

[26] 216 F.R.D. 502 (D. Kan. 2003).

[27] 01-2009-KHV, 2002 WL 511506 (D. Kan. April 3, 2002).

[28] *Summerhouse*, at 507.

[29] *Wurm,* at *2; *Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC,* No. 13-1168-EFM, 2015 WL 5821696, at *2 (D. Kan. Oct. 5, 2015).

[30] *Cargill Meats*, at *2 (citing *Burns,* 330 F.3d at 1281-82; *Price v. City of Wichita*, No. 12-1432-CM, 2014 WL 289453, at *7 (D. Kan. Jan. 27, 2014); and *Odessa Ford, LLC v. T.E.N. Investments, Inc.*, No. 07-2161-CM, 2008 WL 3077153, * 1 (D. Kan. Aug. 4, 2008)).

bear are, i.e., are material to, Plaintiff's survival claims that Mr. Gray suffered conscious pain and suffering.

Finding the errata changes material, the Court will now consider the *Burns* factors. Regarding the first factor, Conner Industries' counsel had the opportunity to cross-examine its own expert, but chose not to. The second factor, whether the corrections are based on newly discovered evidence, the Court finds they are not. The first change is based upon Dr. McMaster's further review of the Sedgwick County EMS records which his initial report makes clear he had before he offered his initial opinions. Similarly, the second change is based upon materials that Plaintiff's expert Dr. Bledsoe relied upon, and Dr. McMaster's initial report again indicates he had Dr. Bledsoe's report at the time he offered his initial opinions. Regarding the third factor, the Court found no need to correct confusion. Rather than clarifying his first responses, the Court finds both errata changes at issue were meant to offer additional support to Dr. McMaster's opinions. Accordingly, Plaintiff's motion to strike the two errata changes set out above is GRANTED.

## 2.      Supplemental Expert Report

### a.      Opinions from Errata Changes to Deposition

Dr. McMaster's February 18, 2022 supplemental report[31] sets out the additional materials he reviewed in formulating his supplemental opinions, which for the purposes of this discussion, does not include the Sedgwick County EMS records. As discussed above,

---

[31] ECF No. 147-5.

Dr. McMaster had those records when he prepared his initial report.[32] His report includes 2 paragraphs of additional opinions, one of which encompasses one of the errata changes to his deposition. It states:

> I have also reviewed again the Sedgwick County EMS records relative to Mr. Gray's accident. Such records indicate that the pre-hospital responders intubated Mr. Gray and utilized bag ventilation as part of their resuscitative efforts. This is verified by scene photos and corroborated within the Sedgwick County emergency response records. The mechanism of intubation and ventilation would have contributed to the post-mortem finding of sawdust in the bronchi and bronchioles. This further supports my conclusion that Dr. Bledsoe's report and opinion that Mr. Gray would have been aware of the fact he was going to die or struggling, especially due to any finding of sawdust in Mr. Gray's bronchi or bronchioles, is mere speculation and conjecture unsupported by the factual evidence or a scientifically valid method.

Defendant argues Dr. McMaster's initial report was incomplete and the February 18, 2022 supplemental report is only intended to complete the initial disclosure. The Court disagrees and finds the paragraph encompassing his errata changes to his deposition set out above is, in fact, a new and untimely disclosure.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B)(i) an expert report shall contain "a complete statement of all opinions the witness will express and the basis and reasons for them." The disclosures are to be produced "at the times and in the sequence that the court orders."[33] Fed. R. Civ. P. 26Fed. R. Civ. P. 26(e)(1)(A) addresses supplementation of expert reports.

---

[32] ECF No. 147-2.
[33] Fed. R. Civ. P. 26(a)(2)(D).

It provides a party must supplement or correct its disclosure in a timely manner if "the party learns that in some material respect the disclosure… response is incomplete or incorrect." Supplementation under the Federal Rules means "correcting inaccuracies, or filing the interstices of an incomplete report based on information that was not available at the time of the disclosure."[34] "A party may not utilize Rule 26(e)(1) to sandbag his opponent or to 'deepen' or 'strengthen' his case where the information should have been included in the expert report."[35] A supplemental report that "states additional opinions or rationales or seeks to 'deepen' or 'strengthen' opinions expressed in the original report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."[36]

Dr. McMaster had the Sedgwick County EMS information at the time of his initial report. And Defendant does not argue the initial report was incomplete or inaccurate as it pertains to Dr. McMaster's opinions regarding the presence of sawdust in Mr. Gray's lungs. The Court finds the additional opinion regarding intubation by first responders contributing to the post-mortem finding of sawdust in the lungs was meant to strengthen and deepen his opinion that the opinion of Plaintiff's expert "is mere speculation and conjecture unsupported by the factual evidence or a scientifically valid method." The Court finds this

---

[34] *Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *3 (D. Kan. July 14, 2005) (quoting *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998).
[35] *Id.* at *3.
[36] *In re Cessna 208 Series Aircraft Prods. Liab. Litig.,* No. 05-md-1721-KHV, 2008 WL 4937651, at*2 (D. Kan. Nov. 17, 2008) (citing *E.E.O.C. v. Outback Steak House of Fl., Inc.,* No. 06-1935, 2008 WL 3992172, at *8 (D. Colo. Aug. 20, 2008)).

portion of the February 18, 2022 report an improper supplement and was untimely where it was produced well after Defendant's deadline of September 27, 2021.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[37] Thus the Court must look at whether this improper, untimely supplement was substantially justified or harmless. "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."[38]

The Court need not make explicit findings regarding whether the untimely, improper disclosure was substantially justified or harmless.[39] However, the following factors should guide the exercise of the Court's discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.[40] The Court finds the disclosure of additional opinions based on information available to the expert at the time of his initial report is not substantially justified and although it does not rise to the level of bad faith, it was willful. Additionally, the Court finds Plaintiff was surprised by a new opinion in Dr. McMaster's report which was produced on the then deadline for the close of discovery and

[37] Fed. R. Civ. P. 37(c)(1).
[38] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999).
[39] *In re Cessna,* at*3 (citing *Woodworker's Supply, Inc.,* 170 F.3d at 993).
[40] *Woodworker's Supply, Inc.,* at 993.

would be prejudiced by the cost to re-depose the expert. Although an extension of the discovery cutoff to allow for a second deposition of Dr. McMaster would not disrupt trial, where the dispositive motion schedule is still yet to be set, the Court will not exercise its discretion[41] to reopen discovery. This case has been pending for 26 months. The parties have had more than ample time for discovery through the various phases. Now, it is time for the parties to move on to their dispositive and *Daubert* motions and move this case towards trial. The Court finds the supplementation of Dr. McMaster's report with additional opinions regarding the presence of sawdust in Mr. Gray's lungs is not substantially justified and is harmful and orders it to be stricken.

### b.   Opinions from Review of Late Produced Medical Literature

The second paragraph of opinions from Dr. McMaster's February 18, 2022 supplemental report is based on Dr. McMaster's review of medical literature that Plaintiff produced in her Rule 26(e) supplemental disclosures, 40 days prior to the close of discovery, as well as the records sought from the RFSC after the production of the medical literature. The paragraph at issue states:

> Based upon this review, I was unable to identify any added information that contradicts or disputes the opinions I have previously provided in this matter. The additional medical literature, which I understand was disclosed by the Plaintiff in this case, supports my prior expert report and opinions dated September 20, 2021, and my deposition testimony given on November 15, 2021. Furthermore, indisputable medical and

---

[41] *Aid for Women*, at *4 (citing *Martinez v. Schock Transfer & Warehouse Co.,* 789 F.2d 848, 850 (10th Cir. 1986)) ("The Court has broad discretion over its control of discovery.")

> scientific evidence exists confirming Mr. Gray had recent pre-mortem consumption of alcohol. The post-mortem alcohol levels reported within the blood and vitreous confirms within a reasonable degree of medical certainty antemortem ingestion and metabolism of alcohol and is not representative of the elimination phase of alcohol ingestion. Furthermore, a detailed review of the file materials from the Regional Forensic Science Center support my opinion that there was no scientific or forensic evidence of post-mortem decomposition, putrefaction, or microbial alcohol production.

The presence of alcohol in Mr. Gray's body has been known since the autopsy report from his death was produced. Dr. McMaster opined on the multiple factors which contributed to Mr. Gray's unanticipated sudden death in his initial report. Those factors included:

> 4. Vitreous alcohol level > Blood alcohol level, suggestive of subclinical evidence of alcohol induced mental acuity changes (risky behavior/poor decision making).
>
> 5. Alcohol level (>0.04 mg/dl) at the time of death consistent with statutory impairment, K.S.A. 44-501(2).

Dr. McMaster's initial report also included the following opinions based on the presence of alcohol in Mr. Gray's system.

> Given the post-mortem identification of alcohol within the blood and vitreous fluid would also support that an additional common comorbidity contributed to the accidental death suffered by Mr. Gray. Individuals with alcohol levels between 0.01-0.12 mg/dl manifest clinical signs and symptoms which may appear relatively normal to ordinary observers. Slight changes in behavior and decision making may be identified by special testing. It is well documented within medical literature that despite the appearance of "normal behavior" computation speed decreases, mental acuity decreases, and individuals

> manifest increased self-confidence and decreased inhibition. Additionally, a diminution of attention, judgement, and control with mild sensory motor impairment is present.
>
> Under Kansas workers' compensation law, an individual with an alcohol level of 0.04 mg/dl or higher is presumed to be impaired. Mr. Gray was performing work at the time of the accident under his own employ (i.e., gathering sawdust for resale), and under applicable Kansas regulation and the results of Mr. Gray's autopsy, he would be presumed impaired at the time of his unfortunate accident.

Plaintiff did not disclose an expert regarding the presence of alcohol in Mr. Gray's system. Plaintiff alleges, and the Court is inclined to believe, Plaintiff intended to use the medical literature for impeachment purposes only. However, although the disclosure of documents to be used solely for impeachment is not required under Fed. R. Civ. P. 26(a)(1)(A)(ii), Plaintiff did disclose the documents 40 days prior to the close of discovery. As discussed above, Fed. R. Civ. P. 26(e)(1)(A) addresses supplementation of expert reports. It provides a party must supplement or correct its disclosure in a timely manner if "the party learns that in some material respect the disclosure... response is incomplete or incorrect." Supplementation under the Federal Rules means "correcting inaccuracies, or filing the interstices of an incomplete report based on information what was not available at the time of the disclosure."[42] Expert report supplementation is "not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."[43]

---

[42] *Aid for Women,* 2005 WL 6964192, at *3 (quoting *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998).

[43] *Finch v. City of Wichita,* No. 18-1018-JWB, 2019 WL 3202239, at *2 (D. Kan. July 16, 2019) (citing *In re Complaint of C.F. Bean, L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016).

"Rather, supplementation may only be based upon additional or corrective information that was unavailable when the expert made his or her initial report."[44]

Plaintiff argues Dr. McMaster had none of the information with which to opine on the result of postmortem alcohol production when he wrote his initial report and never made any effort to determine if such information was available. Plaintiff argues the medical literature it produced in its Rule 26(e) disclosures was published at least one year before Dr. McMaster's initial report was disclosed. Plaintiff will be given the opportunity to attack the substance of Dr. McMaster's opinions when it files any *Daubert* motions.

The pivotal question here is whether the medical literature was available to Dr. McMaster when he prepared his initial report. Plaintiff, relying on an unpublished, out of District case[45] that does not appear to have been cited by any other court, argues medical literature published before an expert's report is disclosed is available "regardless of whether the expert reviewed it or had it on hand."[46] "Allowable 'new information' does not include a response to another expert's report in a supplemental report if the information was available when the original report was due."[47] But that is not the case here. Plaintiff does not have an expert who has opined on the presence of alcohol in Mr. Gray's system.

---

[44] *Finch,* at *2 (quoting *Sibley v. Sprint Nextel Corp.,* No. 08-2063-KHV, 2013 WL 1819773, at *3 (D. Kan. April 30, 2013)).

[45] *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.,* No. 08-GD-50000, 2010 WL 8334226, at *3 (N.D. Ohio Dec. 6, 2010), *aff'd sub nom. Decker v. GE Healthcare Inc.,* 770 F.3d 378 (6th Cir. 2014).

[46] ECF No. 147, p. 9.

[47] *Spirit Aerosystems, Inc. v. SPS Technologies, LLC,* No. 09-1144-EFM, 2013 WL 6196314, at *7 (D. Kan. Nov. 27, 2013).

The medical literature Plaintiff disclosed was not relied upon by her expert Dr. Bledsoe. Here Plaintiff's counsel admitted at the March 11, 2022 conference he had the medical literature at the time of Dr. McMaster's deposition in November 2021, he chose not to use it at his deposition, and then he waited until the last day to provide Rule 26(e) supplements to disclose the literature. Under these circumstances, the Court finds the medical literature was not available to Dr. McMaster at the time of his initial report. Based on the above, the Court finds the paragraph of Dr. McMaster's February 18, 2022 report regarding his additional opinions based upon the late identified medical literature is a proper supplement under Fed. R. Civ. P. 26(e).

The Court again looks at justification and harmlessness of the supplementation provided at the then close of discovery. Where the materials were not provided until after Dr. McMaster's initial report was disclosed and his deposition taken, the materials were not something considered by Plaintiff's expert Dr. Bledsoe which would have made them available to Dr. McMaster, the Court finds the late supplement substantially justified. Looking at the factors regarding harmlessness the Court finds: 1) the supplemental opinions should not be a surprise to Plaintiff as they support Dr. McMaster's initial opinions; 2) Plaintiff was given the opportunity to cure any prejudice – at the March 11, 2022 conference Plaintiff discussed the need for a rebuttal expert, the Court reopened discovery until April 8, 2022 and explicitly indicated any expert to be disclosed must be disclosed 10 days prior to that deadline; 3) where Plaintiff was previously given the opportunity to cure any prejudice when the Court reopened discovery, it will not exercise

its discretion to reopen discovery further to allow for a rebuttal expert, therefore the trial will not be disrupted;  and 4) the late supplement was neither in bad faith nor willful. The Court appreciates the position, the ruling leaves Plaintiff in, but based on the discussion above, the paragraph of Dr. McMaster's February 18, 2022 report regarding his additional opinions based upon the late identified medical literature will not be stricken.

## III.    Conclusion

Therefore, for the reasons set forth above, Plaintiff's Motion to Strike the Supplemental Report and Errata Sheet of Dr. John McMaster (**ECF No. 147**). is **GRANTED IN PART and DENIED IN PART as described herein**.

**IT IS SO ORDERED.**

Dated April 25, 2022.

<u>s/ Gwynne E. Birzer</u>
GWYNNE E. BIRZER
United States Magistrate Judge

19